UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ELLA WEES HIGGINBOTHAM, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. G-09-310 |
| § | |
| CLEAR CREEK INDEPENDENT § | |
| SCHOOL DISTRICT, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM ORDER & OPINION

Plaintiff Ella Wees Higgenbotham[1] worked as a deaf education interpreter with the Clear Creek Independent School District ("CCISD") and the Galveston Brazoria Cooperative for the Hearing Impaired ("the Coop") until her termination in April 2009. CCISD fired Higgenbotham after conducting an investigation which found that Higgenbotham chastised a female high school student for her attire and pulled on the student's shirt, exposing part of the student's breast. Following her termination, Higgenbotham hired legal counsel and unsuccessfully challenged the termination through CCISD's four-level grievance process.

In this lawsuit, Higgenbotham claims that CCISD and the Coop (1) deprived her of substantive due process by publicizing false and stigmatizing charges about

---

[1] Although Plaintiff's name is spelled "Higgenbotham" on the docket sheet for this case, the Court believes that the correct spelling of her name is "Higgenbotham" based on the parties' submissions and will refer to her as such.

her termination without providing her the opportunity to clear her name; and (2) violated procedural due process by denying her adequate safeguards to rebut the charges that led to her termination. Higgenbotham's substantive due process claims originally extended to three individual defendants employed by the School District and Coop, but the Fifth Circuit dismissed those claims on interlocutory appeal. *Higgenbotham v. Connaster*, 420 F. App'x 466, 469 (5th Cir. 2011).

CCISD and the Coop now seek summary judgment. Having reviewed the briefing, record, and applicable law, the Court concludes that the Fifth Circuit's ruling that Higgenbotham did not establish an underlying substantive due process violation against the individual defendants warrants summary judgment on that claim with respect to CCISD and the Coop. Her procedural due process claim also fails because an at-will employee like Higgenbotham does not have a constitutionally protected property interest. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.  BACKGROUND

The incident that led to Higgenbotham's termination occurred during a first period class at Alvin High School,[2] where Higgenbotham served as a deaf education interpreter for a deaf teacher and five deaf or hard of hearing students.

---

[2] Although the incident took place at Alvin High School, *see* Docket No. 56-3, which is not in CCISD, CCISD served as the fiscal agent for the Coop during the 2008-2009 school year, making Higgenbotham a CCISD employee. *See* Docket No. 54, Ex. A ¶¶ 3–4. Higgenbotham interpreted for both CCISD and Alvin ISD at the time. Docket No. 56-2 ¶ 9.

The alleged student victim and Higgenbotham provide very different versions of what took place. As documented by Sandra Connatser, the Director of the Coop, the student complained of Higgenbotham's conduct to a teacher, the Assistant Principal, and Connatser on the day of the incident. Docket No. 56-3; *see also* Aff. of Sheila P. Haddock, Docket No. 54, Ex. A ¶¶ 5–6. The student stated she was "decorating" a picture of herself wearing a swimsuit on the computer when Higgenbotham told her that the picture was inappropriate. Docket No. 56-3 at 1. The student further alleged that Higgenbotham told her, "look at you – you always wear tight pants," before gesturing that the student looked like a prostitute, without using that word specifically. *Id.* Finally, the student complained that Higgenbotham then grabbed the student's shirts—a button down shirt with a tank top underneath—and pulled them away from her body, thereby undoing three buttons on the outer shirt and exposing part of her breast, but not the nipple. *Id.* Another student in the class who claimed to witness the incident provided a similar story to the Coop Director and the Assistant Principal. *Id.*

In the original written statement Higgenbotham provided to administrators on the day of the incident, she explained that after the student showed her the picture, Higgenbotham "told her that she does not need to show so much of herself" and "outline[ed] the outside of her shirt . . . and how low-cut it was," but that "[Higgenbotham's] finger did not touch her barely at all." Docket No. 54, Ex.

B-1. Higgenbotham provided a more detailed statement later that day, which added context about the student's prior dress code issues and Higgenbotham's intention to help the student. *Id.* at B-2. The amended statement also emphasized that Higgenbotham "did not take [the student's] shirt off in any way [or] touch her with my *hand at all*." *Id.* (emphasis in original). Higgenbotham's affidavit and latest Complaint elaborate that Higgenbotham only has a right hand and that she never touched the student with that hand. Docket Nos. 56-2 ¶¶ 21–23, 54; 44 ¶¶ k–m, vv. Instead, she maintains that the student pushed her right hand away while Higgenbotham was signing to her. *Id.*

After obtaining information from Higgenbotham, the alleged student victim, the student witness, and the interpreter coordinator, CCISD administrators decided to suspend Higgenbotham with pay pending an investigation. *See* Docket Nos. 56-2 ¶ 46; 56-3. Roughly a month later, CCISD terminated Higgenbotham, noting that it had "concluded [its] investigation and determined that [Higgenbotham's] conduct was inappropriate toward a student." Docket No. 54, Ex. B-3. The letter attributed Higgenbotham's termination to "non-compliance with CCISD policy and regulations," including policies that require employees to "perform their duties in accordance with . . . ethical standards" and "recognize and respect the rights of students." *Id.*

Following her termination, Higgenbotham hired legal counsel and engaged in the four-level grievance process designated for dismissed at-will employees, as outlined in CCISD Board Policy DGBA (Local). *See* Docket No. 54, Exs. A-1, A-3. For the Level I grievance, the Coop Director, in conformance with CCISD policy, investigated the incident, held a hearing at which Higgenbotham and her lawyer contested the termination, and issued a written response denying the grievance. *Id.* at Exs. B-4 at 2; B 95:25–98:10, 142:8–12. As allowed by the CCISD policy, Higgenbotham and her lawyer appealed the decision and later attended a Level II hearing in front of Cassandra Sutton, CCISD's Human Resources Director, where they presented evidence and Higgenbotham's version of the events once again. *Id.* at Ex. B 142:13–143:4. Sutton rejected Higgenbotham's appeal in a letter, noting "it is determined that Ms. Higgenbotham's conduct was inappropriate toward a female student" and "that her duties as an interpreter were not performed in accordance with District policy." *Id.* at Ex. B-4 at 4. The process repeated itself for the Level III appeal during which Higgenbotham and her lawyer pled her case unsuccessfully in front of the CCISD Assistant Superintendent and General Counsel. *Id.* at Exs. B 141:18–145:5; B-4 at 5. Higgenbotham attests that she was somewhat restrained in telling her version of the events, but only by the advice of her counsel, not CCISD. *Id.* at Ex. B 143:10–145:5.

As with the first three grievances, CCISD followed its internal procedures for the final Level IV grievance. After Higgenbotham's lawyer filed that grievance, CCISD's Board of Trustees selected attorney Richard Hightower to conduct the hearing, review evidence, and provide a recommendation for disposition. *See id.* at Ex. B-5. Hightower prepared a five-page recommendation, in which he concluded that although Higgenbotham consistently denied the allegations against her, the administration had a reasonable basis to believe the allegations in light of the immediate and thorough investigation of the incident. *Id.* Higgenbotham was given notice of the recommendation and an opportunity to submit a written response for the Board's consideration. *Id.* at A-2. Higgenbotham's lawyer objected to the recommendation and to the grievance process generally because (1) he was not allowed to confront the students who made the accusations; (2) the hearings were not "fact based;" (3) the District's evidence was all hearsay; and (4) the first three grievances were decided by the administrators who originally sought termination. Docket No. 56-5. The Board nonetheless voted to adopt the recommendation and reject Higgenbotham's appeal. Docket No. 54, Ex. A ¶ 8.

Higgenbotham claims that CCISD later reported the alleged event to the offender database as required by statute for sexual offenses, and that CCISD's disclosure has prevented Higgenbotham from gaining and securing employment.

Docket No. 44 at 10, 29.  CCISD, however, maintains that it has not disclosed the circumstances surrounding the termination to any third party, except in the course of defending Higgenbotham's subsequent claim for unemployment benefits with the Texas Workforce Commission.  Docket No. 54 at 21, Ex. A ¶ 7.

## II. STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. DISCUSSION

### A. Substantive Due Process

State employment decisions that harm an individual's reputation may implicate Fourteenth Amendment liberty interests.  The Supreme Court has noted that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) (quoting

*Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). But "the plaintiff must allege more than merely the stigma of discharge" to state a claim for deprivation of a liberty interest. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (citation omitted). Instead, the discharge must occur "in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Id.* (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)). Specifically, a plaintiff must show:

> (1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing.

*Id.* (citation omitted).

Higgenbotham alleges that Defendants damaged her reputation, and consequently her job prospects, by publicly disclosing the students' allegations. The claim is nearly identical to the one that the Fifth Circuit dismissed on interlocutory appeal, *see Higgenbotham*, 420 F. App'x at 467–69, however, it now (1) is directed at CCISD and the Coop instead of their individual representatives, and (2) alleges that Defendants disclosed the students' allegations to the Texas Workforce Commission in addition to offender databases.

Those two differences do not alter the Fifth Circuit's determination that Higgenbotham "fails to assert facts that would support several elements listed in

*Hughes*."[3] 420 F. App'x at 469. And the Fifth Circuit was merely considering whether Higgenbotham had made sufficient allegations in her complaint to state a claim under the Rule 12 standard; now, at the summary judgment stage, she faces the higher burden of actually producing evidence to support her claims. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) (comparing Rule 12 and Rule 56 standards of review).

The first element of the substantive due process claim that Higgenbotham fails to establish is that the "charges were made public." *Hughes*, 204 F.3d at 226. Her complaint, without any factual support, speculates that CCISD disclosed the incident to a publicly available offender database because Texas law mandates the reporting of sexual offenses toward minors. *See Higgenbotham*, 420 F. App'x at 469. Higgenbotham produces no evidence showing who reported the incident or to which database. *Id.* As the Fifth Circuit stated, Higgenbotham "cannot rest on the assumption that CCISD reported her conduct to a publicly available database on the theory that Texas law requires the disclosure of incidents involving sexual misconduct toward a minor" given that "CCISD never indicated that it terminated

---

[3] Under the law of the case doctrine, "'an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'" *Gene & Gene, L.L.C. v. Biopay L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010) (quoting *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006)). The individual defendants were able to appeal the ruling on the motion to dismiss because they had asserted a qualified immunity defense. But the Fifth Circuit's holding was that Higgenbotham had failed to allege an underlying constitutional violation and did not turn on the immunity-specific question of whether there was a violation of clearly established law.

[her] for sexual impropriety." *Id.* Higgenbotham now also cites Texas Family Code § 261.101 as requiring disclosure for "abuse or neglect," but CCISD never indicated that it terminated Higgenbotham on those grounds either.

Higgenbotham's latest allegation—that CCISD disclosed the facts of the incident to the Texas Workforce Commission—does not salvage the publication element.[4] CCISD admits that it disclosed its basis for termination to the Commission in the course of contesting Higgenbotham's claim for unemployment benefits. But the Fifth Circuit has established that the publication of stigmatizing charges in defense of a related legal action is exempt from Fourteenth Amendment scrutiny. *Kelleher v. Flawn*, 761 F.2d 1079, 1088 (5th Cir. 1985) (quoting *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975)); *see also Burton v. Town of Littleton*, 426 F.3d 9, 18 (1st Cir. 2005) ("There is some irony in this case. Burton's lawsuit—brought, to be sure, after she had difficulty finding work as a teacher—has now made public the reasons for termination of her employment, as was not true before.").

In addition to the publication element, Higgenbotham also fails to establish a

---

[4] Higgenbotham also suggests in her deposition that Defendants may have disclosed stigmatizing charges to prospective or current employers, yet fails to advance these allegations in her complaint or summary judgment response. Regardless, Higgenbotham conceded at her deposition that she has no evidence that CCISD disclosed the circumstances of her termination to any prospective employers and that she often omitted her CCISD employment history from job applications. *See* Docket No. 54, Ex. B 132:18–133:3, 75:6–75:22. Higgenbotham also stated that CCISD called her then-current employer, the Lufkin Learning Center, and disclosed that Higgenbotham had initiated a lawsuit, but Higgenbotham fails to allege or present evidence that CCISD disclosed any stigmatizing charges to Lufkin. *See id.* at 71:1–72:3.

genuine issue of material fact regarding the interrelated elements of whether "she requested a hearing to clear her name" and whether "the employer refused her request for a hearing." *Hughes*, 204 F.3d at 226. Higgenbotham presents nothing in her latest complaint or summary judgment response to change or challenge the Fifth Circuit's finding on appeal that "she does not identify the request for a hearing or its denial." *Higgenbotham*, 420 F. App'x at 649. Indeed, "[t]he allegations in the complaint point toward the opposite conclusion—that Higgenbotham was able to present her side of the story both verbally before the assistant principal and in writing." *Id.*

Higgenbotham pleads the same facts to support her substantive due process claims against CCISD and the Coop that she asserted against the individual defendants. Accordingly, the Fifth Circuit's conclusion that Higgenbotham's liberty interest claim was legally deficient holds true against the current Defendants. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original).

### B. Procedural Due Process

Higgenbotham's second claim—which was not at issue in the interlocutory appeal—is that she was deprived of procedural due process because the Defendants

(1) based its termination decision on hearsay with no written statement from the students; (2) failed to timely disclose the evidence it used to base its decision; (3) denied her the opportunity to cross-examine witnesses; and (4) denied her the opportunity to conduct discovery.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569–70. But "[p]ublic employees, including teachers, are entitled to due process protections prior to termination only if they have a property interest in continued employment." *Comb v. Benji's Special Educ. Acad.*, No. H-10-3498, 2012 WL 1067395, at *5 (S.D. Tex. Mar. 28, 2012) (citing *Roth*, 408 U.S. at 576–78). Property interests are not created by the Constitution, but stem from independent sources, such as contract, city policy, or state law. *See Roth*, 408 U.S. at 577.

Higgenbotham concedes that she was an at-will employee of CCISD. *See* Docket No. 54, Exs. A ¶ 4, A-3 ("Personnel employed on an at-will basis include but are not limited to employees in the following categories: paraprofessional and auxiliary employees."); *see also Comb*, 2012 WL 1067395, at *6 (noting presumption in Texas that "employment is at-will unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions

under which an employee may be terminated") (citations and quotation marks omitted). As an at-will employee, Higgenbotham could be terminated at any time, and therefore had no constitutionally protected property interest in her employment. *Id.* (quoting *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 439 (5th Cir. 2001)); *see also* Docket No. 54, Ex. A-3 ("At-will employees may be dismissed at any time for any reason not prohibited by law or for no reason, as determined by the needs of the District.").

While Higgenbotham cites several opinions that require certain due process protections, those cases involved contractually or statutorily guaranteed benefits and not at-will employment. *See, e.g.*, *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 255 (1987) (involving federal statute that protected interstate truck driver employment); *Mathews v. Eldridge*, 424 U.S. 319, 323 (1976) (involving receipt of social security benefits). And no CCISD rule or policy secured an interest in continued employment for Higgenbotham.

It is undisputed that CCISD abided by its rules and policies regarding at-will employees complaints and grievances. *See* Docket No. 54, Ex. A-1. As described in detail above, Higgenbotham, with the aid of a lawyer, filed a formal complaint and engaged in the four-level grievance process outlined in CCISD Board Policy DGBA (Local). *Id.* Although ultimately unsuccessful, she and her lawyer were given the opportunity to present her case to the Coop Director, the Assistant

Principal, CCISD's Human Resources Director, CCISD's General Counsel, CCISD's Assistant Superintendent, and CCISD's Board of Trustees. At every level, Higgenbotham received a written response stating the basis for her termination. CCISD provided Higgenbotham, an at-will employee, substantial procedural safeguards both before and after her termination.[5]

## IV. CONCLUSION

The Court is not called on in this case to determine whether Higgenbotham's or the students' version of events is the truth. What is at issue is whether the Defendants treatment of Higgenbotham complied with the Constitution's guarantee of due process of law. For the reasons discussed above, the Court finds no evidence to support the claims of substantive or procedural due process violations. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment (Docket No. 54).

SIGNED this 14th day of September, 2012.

_____
Gregg Costa
United States District Judge

---

[5] Defendants also seek summary judgment on the grounds that (1) the Coop was not Higgenbotham's employer and; (2) Higgenbotham failed to plead any custom or policy that was the basis of the constitutional violation as is required for liability under 42 U.S.C. § 1983. The Court need not reach these issues given its rulings above.